IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **ROBIN JONES, individually and on behalf of all persons similarly situated,** | **Civil Action No.:** |
| **Plaintiff,** | **Complaint — Collective Action** |
| v. | **Jury Trial Demanded** |
| **DHL EXPRESS (USA) INC. d.b.a. DHL Express, and FLYWAY EXPRESS, LLC,** | |
| **Defendants.** | |

## COLLECTIVE ACTION COMPLAINT

Plaintiff Robin Jones ("Plaintiff"), through her undersigned counsel, individually, and on behalf of all persons similarly situated, files this Collective Action Complaint ("Complaint") against Defendants DHL Express (USA) Inc. d.b.a. DHL Express ("DHL") and Flyway Express, LLC ("Flyway")(collectively, "Defendants"), seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.

Plaintiff asserts her FLSA claims as a collective action under FLSA Section 16(b), 29 U.S.C. § 216(b). The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others:

### INTRODUCTION

1. Flyway supplies last-mile delivery services to DHL via its participation in DHL's Parcel Metro program. Defendants employ delivery drivers or couriers – such as Plaintiff and the proposed Collective – to deliver packages to DHL's customers.

2. This case is about Defendants' failure to comply with applicable wage laws and to pay its non-exempt delivery drivers or couriers for all time worked – including overtime – as

required to meet DHL's delivery needs and deliver hundreds of DHL packages each day.

## JURISDICTION AND VENUE

3. Jurisdiction over Plaintiff's FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants reside and conduct business in this judicial District and Division, and a substantial part of the events giving rise to Plaintiff's and Collective Members' claims occurred within this judicial District and Division.

## PARTIES

5. Plaintiff Robin Jones ("Plaintiff Jones") is a citizen of Tennessee and resides in Memphis, Tennessee. Plaintiff Jones worked for Defendants as a delivery driver in Tennessee from on or about May 2019 to September 2019. Pursuant to 29 U.S.C. § 216(b), Plaintiff Jones has consented to be a plaintiff in this action. *See* Ex. A.

6. Defendant DHL Express (USA) Inc. d.b.a. DHL Express ("DHL") is an Ohio corporation, and is headquartered at DHL's corporate office in Plantation, Florida. DHL maintains service centers across Tennessee including in Memphis and Nashville.

7. Defendant Flyway Express, LLC ("Flyway") is a limited liability company organized under the laws of Tennessee with its principal office in Memphis, Tennessee.

8. During times relevant, Defendants Flyway and DHL acted as joint employers with respect to the delivery drivers or couriers who delivered DHL's packages.

9. Defendant Flyway participates in DHL's Parcel Metro program and employ delivery drivers or couriers, such as Plaintiff, to deliver packages to DHL customers.

10. At all times material to this action, Defendants have been engaged in commerce or

in the production of goods for commerce as defined by the FLSA

11. Defendants' employees are engaged in interstate commerce and handle or work on goods that have been moved in and/or produced in commerce.

12. Defendants' annual gross volume of sales made or business done exceeds $500,000.

13. The unlawful acts alleged in this Complaint were committed by Defendants and/or their officers, agents, employees, or representatives, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of Defendants.

14. During times relevant, Plaintiff was an employee of Defendants and is covered by the FLSA.

15. During all times relevant, Defendants are employers and/or enterprises covered by the FLSA.

16. Defendants employ individuals in Tennessee, as well as potentially other states.

## COLLECTIVE DEFINITIONS

17. Plaintiff Jones brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of herself and the following class:

> All current and former delivery drivers or couriers who were paid by Defendants to deliver packages for DHL in the United States during the applicable limitations period (the "FLSA Collective").

18. Plaintiff reserves the right to redefine the Collective prior to notice or class certification, and thereafter, as may be warranted or necessary.

## FACTS

### Defendants Are Joint Employers

19. Defendant DHL is the world's leading logistics company with a team of 380,000 shipping professionals that transport goods in over 200 countries and territories, including the

3

United States, to customers in a short period of time.

20. In 2018, DHL unveiled DHL Parcel Metro -- "a new fast and flexible service for online retailers that meets customers increasing demand for same-day and next-day delivery. Parcel Metro… allows DHL eCommerce to create a 'virtual delivery network' of local and regional delivery vendors and crowd-sourced providers to ensure maximum flexibility and capacity over the last mile." *DHL Introduces New Technologies and Delivery Solutions in U.S. to Meet Evolving Demands of the Urban Consumer*, DHL (Mar. 15, 2018), https://www.dhl.com/global-en/home/press/press-archive/2018/dhl-introduces-new-technologies-and-delivery-solutions-in-us-to-meet-evolving-demands-of-the-urban-consumer.html.

21. Defendant DHL holds itself out as a company able to provide standard domestic and international parcel pickup, delivery, and return solutions for business customers and individual customers as well as e-commerce logistics and facilitation services. Lee Spratt, CEO of DHL eCommerce Americas, claimed that it is "important for DHL to offer services that not only meet [retailers'] needs, but do so in a highly consistent fashion. DHL Parcel Metro provides that consistency, and offers retailers the ability to extend their brand and messaging to consumers throughout the final mile delivery for a unique shopping experience." *Id.*

22. Defendant DHL utilizes local and regional delivery vendors, such as Flyway, in order to transport goods across the country to customers in a short period of time.

23. Defendant DHL and its local and regional delivery vendors, such as Flyway, are in the business of delivering goods across the United States.

24. Defendant DHL provides its local and regional delivery vendors, such as Flyway, with DHL-branded vans, DHL-branded uniforms and badges, handheld scanning devices, and other services.

25. Plaintiff and other delivers drivers or couriers are required to wear DHL-branded shirts with the distinctive DHL logo.

26. When delivery drivers or couriers present themselves to DHL customers, they identify themselves as DHL associates.

27. Flyway participates in DHL's Parcel Metro program, through which it operates a carrier and logistics business in providing vans, dispatchers, and drivers to deliver goods across the United States on behalf of DHL and its affiliates.

28. DHL relies on local and regional delivery vendors, such as Flyway, for the essential services of transporting goods from DHL ServicePoints to DHL customers' doors as quickly as possible, yet DHL attempts to shield itself from liability by utilizing thinly capitalized companies, such as Flyway, to provide the employees to transport their goods.

29. Flyway provides delivery services for DHL at one or more of DHL's ServicePoints through the use of delivery drivers or couriers such as Plaintiff.

30. Flyway operates out of a DHL-controlled ServicePoint located in Memphis, Tennessee.

31. Delivery drivers or couriers are engaged to fulfill DHL's nationwide delivery needs.

32. DHL and local and regional delivery vendors, such as Flyway, utilize delivery drivers or couriers, such as Plaintiff, to meet DHL's nationwide delivery needs and make deliveries of goods from DHL ServicePoints to DHL customers.

33. The goods that delivery drivers or couriers deliver from DHL ServicePoints to DHL's customers originate, or are transformed into their final condition, in a different state than the delivery state.

34. The goods delivery drivers or couriers deliver from DHL ServicePoints to DHL's

customers are not transformed or modified during the shipping process.

35. Delivery drivers or couriers deliver goods to DHL customers in the same condition as they were shipped to the DHL ServicePoint.

36. Delivery drivers or couriers deliver goods to DHL customers that were shipped around the United States.

37. Delivery drivers or couriers handle goods that travel interstate.

38. Delivery drivers or couriers are directly responsible for transporting goods in interstate commerce.

39. Delivery drivers or couriers drive vehicles in order to deliver DHL packages, which is vital to the commercial enterprise of the local and regional delivery vendors and DHL.

40. A strike by delivery drivers or couriers would disrupt interstate commerce. Plaintiff and other delivery drivers or couriers are necessary in order for DHL goods traveling interstate to make it to their final destination – DHL customers.

41. Plaintiff and other delivery drivers or couriers are not required to have a commercial driver's license as a condition of employment.

42. Plaintiff and other delivery drivers or couriers drive vans that weigh less than 10,001 pounds.

43. At all relevant times, DHL has been affiliated with and/or operating with Flyway, with respect to Plaintiff and other similarly situated employees such that DHL and Flyway, are the "joint employers" of Plaintiff and other similarly situated employees.

44. The local and regional delivery vendors that DHL utilizes are given access to DHL's technology and delivery data.

45. While the local and regional delivery vendors that DHL utilizes pay the delivery

6

drivers or couriers, DHL has both influence and control over how delivery drivers or couriers are paid.

46. DHL supervises and controls the work activities, work schedules, conditions and management of delivery drivers or couriers, such as the Plaintiff.

47. Delivery drivers are required to undergo several weeks of on-the-job training, that is conducted by Flyway, in order to ensure that drivers adhere and conform to DHL's standards and policies.

48. On information and belief, DHL disciplines delivery drivers or couriers for violations of their policies and procedures.

49. If a delivery driver or courier fails to meet DHL's expectations, they can be terminated by both DHL and Flyway personnel.

50. Although DHL does not directly pay delivery drivers or couriers, its policies and practices regarding delivery goals and payment dictated the delivery vendors' ability to pay the delivery drivers or couriers for overtime work.

51. Delivery drivers or couriers are required to use a DHL-provided handheld scanning device. The handheld scanning device is also used for navigation assistance and package scanning. The handheld scanning device also allows DHL to track a delivery driver's or courier's movements and work progress.

52. DHL has access to the handheld scanning devices, which are given to and used by each delivery driver or courier.

53. DHL sets the delivery route that the delivery driver or courier will complete.

54. DHL assigns and provides routes to delivery vendors, including Flyway.

55. DHL controls the way that parcels are packaged and presented to DHL customers.

For example, Plaintiff Jones was contacted by DHL personnel and instructed to rewrap a parcel according to DHL's guidelines.

56. Throughout their employment with Defendants, delivery drivers or couriers are required to comply with DHL's operational procedures and in meeting DHL's work expectations. As required by DHL, local and regional delivery vendors, like Flyway, provide delivery drivers or couriers, such as the Plaintiff and other similarly situated employees, with a DHL-branded vehicle.

57. The vehicles are branded with DHL's logo (as seen below).



**DHL's Use of Local and Regional Delivery Vendors via the Parcel Metro Program**

58. DHL utilizes a "virtual delivery network" of local and regional delivery vendors, such as Defendant, in order to transport goods across the country to customers in a short period of time.

59. DHL and its local and regional delivery vendors, such as Defendant, are in the business of delivering goods across the United States.

60. Delivery drivers or couriers are engaged to fulfill DHL's nationwide delivery needs and make deliveries from DHL facilities to DHL customers.

61. Delivery drivers or couriers work in the transportation industry.

8

62. The local and regional delivery vendors, like Flyway, operate carrier and logistics businesses in providing vehicles and drivers to deliver goods on behalf of DHL and its affiliates.

63. Each of the local and regional delivery vendors, like Flyway, provide delivery services for DHL at one or more of DHL's gateways through the use of delivery drivers such as Plaintiff.

64. Plaintiff Jones was hired on or around May 2019 and worked as a delivery driver for Defendants until on or around September 2019 in DHL's Memphis ServicePoint, making deliveries of packages on behalf of DHL.

### The Nature of Plaintiff's and Other Delivery Drivers' or Couriers' Work

65. The nature of the work performed by delivery drivers or couriers is similar and standardized at each of the DHL Service Points where local and regional delivery vendors provide services for DHL, as the nature of the work is centrally controlled and directed by both Flyway and DHL.

66. Plaintiff and other delivery drivers or couriers begin their shifts once they arrived at a DHL ServicePoint.

67. Plaintiff and other delivery drivers or couriers were regularly required to report to the DHL ServicePoint each morning.

68. Plaintiff and other delivery drivers or couriers subsequently would pick up their vehicle, assigned route, a handheld scanning device, and packages.

69. Upon information and belief, delivery drivers or couriers were required to complete all assigned routes regardless of length of shift.

70. On average, Plaintiff delivered between seventy (70) to one hundred (100) DHL packages per shift. Plaintiff observed that other delivery drivers or couriers routinely delivered a

similar number of packages.

71. Defendants unilaterally selected the parcels and the quantity to be delivered. Plaintiff and other delivery drivers or couriers could not reject delivery assignments.

72. Delivery drivers or couriers who do not abide by Defendants' policies and procedures or complete their assigned routes would be subject to discipline, up to or including termination.

73. Plaintiff and other delivery drivers or couriers were regularly scheduled to work approximately five (5) days per week.

74. All of the work-related activities that Plaintiff and other delivery drivers or couriers were required to and did perform often took twelve (12) or more hours per day to complete.

75. Plaintiff regularly worked more than forty (40) hours a week. Plaintiff observed that other delivery drivers or couriers routinely worked similar hours.

76. Plaintiff observed other delivery drivers or couriers routinely work similar schedules. Defendants were not only aware of and permitted this practice, but the work schedules and conditions imposed by Defendants effectively required this practice.

77. Plaintiff and other delivery drivers or couriers are non-exempt for overtime purposes.

### **Defendants Failed to Pay Delivery Drivers or Couriers Properly**

78. Plaintiff and other delivery drivers or couriers regularly worked more than forty (40) hours per week.

79. Defendants did not pay Plaintiff and other delivery drivers or couriers for all hours worked in excess of forty (40) hours in a workweek and did not pay proper overtime premiums.

80. Defendants paid delivery drivers or couriers a fixed amount per day, without regard

to the number of hours delivery drivers or couriers worked, and regularly did not pay overtime premiums for hours worked more than forty in a work week.

81. Plaintiff was paid a flat rate of $120 per day and she was not paid an overtime premium, despite regularly working more than 40 hours per week.

82. Plaintiff regularly worked approximately 60 to 70 hours per week.

83. Defendants attempted to characterize the day rate payment as hourly plus overtime in Plaintiff's pay stubs by manipulating the regular and overtime rates of pay, but the total amounts paid remained equivalent to flat rate pay.

84. Defendants pay the delivery drivers or couriers, such as Plaintiff and other Collective Members, pursuant to the same unlawful day rate pay policy, without paying overtime for work performed amounting to more than forty hours per week.

85. Defendants' unlawful day rate policy, in which Plaintiff and other delivery drivers or couriers are not compensated for all time worked and are not paid an overtime premium for all hours worked in excess of 40 per workweek, does not comply with the requirements of the Fair Labor Standards Act.

86. In addition, despite tracking DHL's packages to the second, Defendants failed to make, keep and preserve records with respect to Plaintiff and other delivery drivers or couriers sufficient to determine their lawful wages, actual hours worked, and other conditions of employment as required by federal and state law. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week).

**The Failure to Properly Pay Delivery Drivers or Couriers Is Willful**

87. Defendants' actions in violation of the FLSA were or are made willfully in an effort to avoid liability under the FLSA.

88. Even though the FLSA requires overtime premium compensation for hours worked over 40 per week, Defendants do not pay delivery drivers or couriers, such as Plaintiff, compensation for all hours worked.

89. Defendants knew or, absent their own recklessness, should have known, that the delivery drivers or couriers were entitled to such overtime premiums.

90. Plaintiff complained to Defendants' supervisors that she was not receiving proper compensation for all the hours that she worked.

91. Defendants have failed to pay Plaintiff and delivery drivers or couriers all overtime compensation owed.

92. By failing to pay all the overtime compensation owed to Plaintiff and other delivery drivers or couriers, Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

93. Defendants have not made good faith efforts to comply with the FLSA.

**COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA**

94. Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

95. Plaintiff desires to pursue her FLSA claims on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

96. Plaintiff and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendants'

previously described common pay practices and, as a result of such practices, were not paid for all hours worked and were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping and payroll practices.

97. Specifically, Defendants failed to compensate Plaintiff for all hours worked and failed to pay overtime at time and a half (1½) the employee's regular rate as required by the FLSA for all hours worked in excess of forty (40) per workweek.

98. The similarly situated employees are known to Defendants and are readily identifiable and may be located through Defendants' business records and the records of any payroll companies Defendants use.

99. Defendants employ many FLSA Collective Members throughout the United States. These similarly situated employees may be readily notified of the instant litigation through direct means, such U.S. mail and/or other appropriate means, and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime and other compensation violations, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

### COUNT I
### Violation of the FLSA: Failure to Properly Pay Delivery Drivers or Couriers
### (On Behalf of Plaintiff Jones and the FLSA Collective)

100. All previous paragraphs are incorporated as though fully set forth herein.

101. The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate.  *See* 29 U.S.C. § 207(a)(1).

102. Defendants are subject to the wage requirements of the FLSA because each

Defendant is an employer under 29 U.S.C. § 203(d).

103. At all relevant times, Defendants were "employers" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

104. During all relevant times, Plaintiff and the Collective Members were covered employees entitled to the above-described FLSA protections. *See* 29 U.S.C. § 203(e).

105. Plaintiff and the Collective Members are not exempt from the requirements of the FLSA.

106. Plaintiff and the Collective Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

107. Defendants' compensation scheme applicable to Plaintiff and the Collective Members failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

108. Defendants knowingly failed to properly compensate Plaintiff and the Collective Members for all hours worked when they worked in excess of forty (40) hours per week, including by failing to pay proper overtime premiums at a rate of one and one-half (1 ½) times their regular hourly wage, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

109. Defendants also failed to create, keep, and preserve records with respect to work performed by the Plaintiff and the Collective Members sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

110. In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

111. Pursuant to 29 U.S.C. § 216(b), employers, such as Defendants, who intentionally

fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief on behalf of herself and all others similarly situated:

    a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

    b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

    c. Back pay damages (including unpaid overtime compensation, unpaid spread of hours payments and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

    d. Liquidated damages to the fullest extent permitted under the law;

    e. Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

    f. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues of fact.

Dated: August 12, 2020                                    Respectfully submitted,

/s/ Mark N. Foster
Mark N. Foster, BPR # 023626
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
Mfoster@MarkNFoster.com


Sarah R. Schalman-Bergen
Camille Fundora Rodriguez
Krysten L. Connon
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
sschalman-bergen@bm.net
crodriguez@bm.net
kconnon@bm.net

*Attorneys for Plaintiff
and the Proposed Collective*